Mary Hoolick, a Retarded Citizen, by her Parent and Legal Guardian, John Hoolick, et al., Plaintiffs v. Retreat State Hospital, Department of Public Welfare, Frank Beal, Secretary, Department of Public Welfare, George Giddins, Acting Superintendent, Retreat State Hospital, Commonwealth of Pennsylvania and Milton J. Shapp, Governor, Commonwealth of Pennsylvania, Defendants.

Argued February 2, 1976, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR., did not participate.

*Richard Kirschner,* with him *Neal Goldstein, Miriam L. Gafni,* and *Markowitz & Kirschner,* for plaintiffs.

*Allen C. Warshaw,* Deputy Attorney General, with him *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY PRESIDENT JUDGE BOWMAN, April 1, 1976:

Plaintiff, a patient at Retreat State Hospital, acting through her legal guardian and on behalf of other present and future patients of the hospital, has brought a multi-count complaint in equity against the Governor and other State officials seeking (a) to enjoin them from implementing an alleged closing of this institution and mandating its continued operation, (b) the award of punitive and exemplary damages, and (c) costs and reasonable attorney fees.

The essential purpose of the action is to have this Court order that the Retreat State Hospital shall continue in operation within the framework of mental health

facilities operated by the Commonwealth across the State. Her right, and that of the class she purports to represent, to the relief sought is alleged to be found within the provisions of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §4101 et seq. (Act), which if not adhered to by defendants is said to result in a denial to plaintiff and the class of their constitutional right to due process and equal protection and a violation of Article I, Section 26, of the Pennsylvania Constitution.[1]

Defendants have interposed preliminary objections to plaintiff's complaint, asserting sovereign immunity to the extent that plaintiff's complaint seeks monetary damages and other relief mandatory in nature and in the nature of a demurrer for failure to state a cause of action. In considering these preliminary objections, we accept as true all well-pleaded factual averments and inferences reasonably deductible therefrom.[2]

Our analysis of the complaint measured by plaintiff's legal theory in support of the relief sought convinces us that plaintiff, both in her own right and on behalf of the class she purports to represent, has failed to state a cause of action. We must, therefore, sustain defendants' preliminary objections in the nature of a demurrer.

It is averred in the complaint that Retreat State Hospital, as an institution within the framework of mental health facilities operated by the Commonwealth, will be closed at some future date. It is also averred that at the present time new admissions to the hospital are not being accepted, lending an inference of the not too

---

1. "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

2. *Pennsylvania Department of Public Welfare v. UEC, Inc.,* 19 Pa. Commonwealth Ct. 461, 338 A.2d 730 (1975).

distant closing of Retreat as a mental health institution. These are the only significant facts upon which plaintiff prefaces her right to the relief she seeks. It is not asserted that plaintiff or other present patients of Retreat are receiving inadequate treatment or care nor that they will want therefor in the future at Retreat. Equally significant, there are no averments that when Retreat is closed plaintiff or its other present residents or any person needing institutional treatment in the future will be denied adequate mental health facilities or treatment.

Plaintiff's narrowly pleaded complaint thus poses one basic legal issue. Under the applicable statutory law, must Retreat State Hospital remain open as a mental health facility for the use and benefit of plaintiff and its other residents for so long as they need institutional care and treatment? Because of her asserted class action on behalf of future residents, an ancillary issue exists as to any right this class might enjoy in the continued operation of Retreat.

The constitutional issues raised by plaintiff rest squarely upon the statutory law issues involved as the complaint does not attack the constitutionality of the Mental Health and Mental Retardation Act of 1966 itself, nor does it contain a single averment that plaintiff's due process or equal protection rights have been or in the future will be violated by State action of any kind other than the alleged future closing of Retreat and the present policy of not accepting new admissions.[3]

The Mental Health and Mental Retardation Act of 1966 envisions a comprehensive cooperative State-county

---

3. As to this latter averment, the class of persons consisting of potential future residents of Retreat who might otherwise have been admitted to Retreat except for its alleged closing in the future or its present admissions policy, has interests dissimilar to and different from plaintiff, a present resident of Retreat. It is a class she cannot properly represent in this cause of action.

(or multi-county) program for the care, treatment and rehabilitation of persons who are mentally disabled or mentally retarded through a system of out-patient facilities and in-patient facilities for those who need institutionalized care.

The State, through the Department of Welfare, is responsible for the overall supervision and control of the program to assure the availability of and equitable provision for adequate mental health and mental retardation facilities, and the counties, separately or in concert, are assigned responsibilities as to particular programs.

As here pertinent, Section 201(4) of the Act, 50 P.S. §4201(4), requires the State

"To adopt State-wide plans for the operation of all State operated facilities . . . and to assign to each facility or portion thereof, such duties for the care of the mentally disabled, as the secretary shall prescribe. The assignments herein referred to shall be made with due regard to geographical location and population distribution."

And Sections 202 of the Act, 50 P.S. §4202, on the specific subject of State facilities, provides:

"(a) The department shall operate all State facilities and shall assign such functions to each as the secretary shall prescribe.

"(b) The department is hereby authorized to establish, extend, operate and maintain additional facilities and provide mental health and mental retardation services therein. The department may also lease or otherwise acquire . . . other additional facilities."

As to admissions, the Act authorizes any mentally disabled person, or those authorized to act on his behalf, to apply directly "to any facility willing and able to receive him," Section 401 of the Act, 50 P.S. §4401, and authorizes transfers of patients between State facilities

through transfer applications initiated by the director of a State facility, Section 416 of the Act, 50 P.S. §4416.

Within the comprehensive program for the care, treatment and rehabilitation of mentally disabled and mentally retarded persons as envisioned by this Act, and within the foregoing particular provisions of the Act, plaintiff would have the Court find a right, of constitutional proportions, in herself and all other present patients of Retreat that it remain open and functional as a State mental health facility into the indefinite future, presumably at least until she and its other present residents are discharged.

Contrary to plaintiff's assertion, we can find no duty placed upon the State by this legislation that Retreat or any particular mental health facility must remain open and functional for any specific or indefinite future period of time. The statutory mandate that assignment of patients to a State facility shall be made "with due regard to geographical location and population distribution," Section 201(4) of the Act, does not, in our opinion, require such an inflexible result. Whatever rights plaintiff or some other potential patient may have by virtue of this provision, any such right cannot be enlarged into a duty on the part of the State that a patient once admitted to a particular facility must be maintained there regardless of all other considerations. Other provisions of the statute, including those providing for transfer of patients from one State facility to another (Section 416), and common sense dictate a contrary result.

Nor are we persuaded that the provisions of Section 202 of the Act directing the State to operate State facilities and authorizing the establishment of additional facilities, either specifically or inferentially, require the State to continue to operate forever all State mental health facilities functioning at the time of the passage of the Act. The absence of a specific authorization in the

Act to terminate the operation of a particular mental health facility adds no weight to the inference that plaintiff would have us find in this section.

The manifest object of the General Assembly in enacting the Mental Health and Mental Retardation Act of 1966 was to create a cooperative State-county (or multicounty) program across the Commonwealth for those who suffer mental health or mental retardation afflictions. Its implementation and need for flexibility to meet improved or new methods and means of treatment would be seriously impaired if not totally frustrated if Retreat or another particular State mental health facility were to enjoy such a monolithic status. To retard or restrict State action in the operation of such a program, a clear specific legislative intent that a particular mental health facility shall remain functional would be required. The Act contains no such provision.

Having concluded that plaintiff's complaint fails to state a cause of action for the relief which she seeks as to herself and other present patients of Retreat under that statute in question, plaintiff equally fails to state a cause of action to support the constitutional issue she raises which are predicated exclusively upon the asserted cause of action under the statute. Furthermore, constitutional challenges cannot be sustained on the basis of supposition and speculation as to future events. *Ramey Borough v. Department of Environmental Resources,* 15 Pa. Commonwealth Ct. 601, 327 A.2d 647 (1974), *aff'd,* Pa. , 351 A.2d 613 (1976).

Accordingly, we enter the following

ORDER

Now, April 1, 1976, defendants' preliminary objections in the nature of a demurrer are hereby sustained and plaintiff's complaint is dismissed.